IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| SPENCER GODBURN, on behalf of himself and all others similarly situated, | : : : : |
| Plaintiffs, | : : |
| v. | : : |
| | :   No. 3:14-CV-114 (CAR) |
| ADAMS TILE & TERRAZZO, INC., a Georgia Corporation; RUEBEN ADAMS; an individual, and SCOTT ADAMS, an individual, | : : : : : |
| Defendants. | : : |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Spencer Godburn and opt-in Plaintiffs Jorge Salinas and Leonardo Garcia bring this action asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and seeking unpaid overtime compensation from Defendants Adams Tile & Terrazzo, Rueben Adams, and Scott Adams.  Before the Court are Defendants' Motion for Partial Summary Judgment and Plaintiffs' Motion for Summary Judgment.  Having read and considered the Motions, the record in this case, the applicable law, and the parties' arguments, the Court **HEREBY GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Summary Judgment [Doc. 41] and **DENIES** Plaintiffs' Motion for Summary Judgment [Doc. 43].  Specifically, the Court

1

finds Rueben Adams and Scott Adams cannot be held individually liable, and the Court cannot grant judgment as a matter of law to either party on Plaintiffs' claims for overtime compensation and willfulness.

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[1]  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[2]  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[4]  The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a

---

[1] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
[3] *See id.* at 249-52.
[4] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion.[8]  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[9]  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.[10]

## BACKGROUND

In this suit for overtime compensation, both Plaintiffs and Defendants have filed motions for summary judgment.  Plaintiffs seek summary judgment on all of their claims, contending (1) the evidence establishes they worked more than 40 hours per

---

[5] *Celotex,* 477 U.S. at 323 (internal quotation marks omitted).
[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324-26.
[7] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[8] *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).
[9] *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).
[10] *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

week, but Defendants did not pay them overtime in compliance with the FLSA; (2) Defendants' violation was willful; and (3) Defendants Rueben Adams and Scott Adams[11] are individually liable as employers under the FLSA.  Defendants seek summary judgment on two grounds: (1) Defendants Rueben and Scott are not employers under the FLSA, and therefore must be dismissed; and (2) insufficient evidence exists to establish a genuine issue of material fact as to whether they willfully violated the FLSA.  The pertinent background is as follows.

Defendant Adams Tile & Terrazzo ("the Company") is a small family business that installs commercial flooring.  Defendants Rueben and Scott are brothers, and each owns 50 percent of the Company.[12]  They serve as the Company's only corporate officers.[13]  The Company's labor force is divided into three distinct crews: (1) the pouring crew, which pours terrazzo flooring; (2) the grinding crew, which grinds and polishes the floor; and (3) the "punch-out" crew, which fixes any remaining problems.[14]  A different supervisor manages each crew.[15]

Rueben and Scott have different duties in the Company.  Rueben serves as the Company's Chief Executive Officer, and his duties are corporate in nature, as they involve bidding for projects, negotiating prices, and scheduling the crews' work

---

[11] For purposes of convenience, the Court will hereafter refer to Rueben Adams and Scott Adams as Rueben and Scott, respectively.
[12] Rueben declaration [Doc. 41-3, p. 2].
[13] Rueben 30(b)(6) Depo., p. 3 [Doc. 41-5, pp. 9-10].
[14] Jones Depo. [Doc. 41-8, pp. 10-12].
[15] Rueben declaration [Doc. 41-3, p. 3].

assignments.[16]  He does not oversee the crews' on-site work activities, and no evidence indicates he maintains employment records.[17]  Although Rueben approves all firings, he "normally" does not interview or hire crewmembers; the crew leaders do.[18]  Indeed, Rueben did not interview, hire, or fire Plaintiffs.[19]  Although Rueben "informally" approves pay raises proposed by the crew leaders, he does not set pay rates, and no evidence indicates he determines crewmembers' overtime compensation.[20]  When an employee disputes the amount of a paycheck, Rueben calls the crew leader, who resolves the discrepancy.[21]

Although Scott also serves as a corporate officer, the record is unclear as to his title, and no evidence shows he bears responsibility for any corporate duties.[22]  Scott is the crew leader of the pouring crew, and his duties appear limited to that position.[23]  Both Scott and the pouring crew foreman share the authority to hire and fire members of the pouring crew.[24]  Scott, however, did not interview, hire, or fire Plaintiffs.[25]

---

[16] Rueben 30(b)(6) Depo., pp. 13-14 [Doc. 41-5, p. 4].
[17] Rueben declaration [Doc. 41-3, p. 3-4] (explaining Rueben did not oversee Plaintiffs' work activities).
[18] Rueben Depo. [Doc. 41-6, pp. 7-9]; Jones Depo. [Doc. 41-8, pp. 13-14] (explaining grinding crew leader "[n]ormally" makes final hiring decisions for his crew).
[19] Rueben declaration [Doc. 41-3, p. 4].
[20] Rueben Depo. [Doc. 41-3, p. 8] (explaining crew leaders "pretty much set the pay rate"); Rueben declaration [Doc. 41-3, p. 3-4] (explaining grinding crew leader had his own overtime compensation system, and Rueben did not oversee Plaintiffs' work activities).
[21] Rueben 30(b)(6) Depo., p. 18 [Doc. 41-5, p. 5].
[22] *Id.* at pp. 9-10 [Doc. 41-5, pp. 3] (identifying Scott as Chief Financial Officer ("CFO") and President); Rueben Depo. [Doc. 41-6, p. 5] (explaining Scott is Vice President, and there is no CFO); Georgia Secretary of State Business Information [Doc. 44-4] (identifying Scott as CFO).
[23] Scott Depo., p. 12 [Doc. 41-7, p. 4].
[24] *Id.* at p. 12-13 [Doc. 41-7, p. 4].
[25] Scott declaration [Doc. 41-4, p. 4].

Although Scott is "always on the job" while the crew works, the pouring crew foreman ordinarily manages the day-to-day operations of the crew; Scott only "sometimes" does so.[26] Both Scott and the foreman share the authority to set wages for members of the pouring crew.[27] Typically, however, the foreman keeps track of crewmembers' hours worked, and Scott only does so on the rare occasions the foreman is unavailable.[28] On those "rare" occasions, Scott submits the crewmembers' hours to the office manager.[29] No evidence indicates Scott determines his crewmembers' overtime compensation.

Plaintiffs are laborers who worked for the Company and were paid on an hourly basis. During the pertinent time period, Plaintiff Godburn worked primarily on the grinding crew but testified he also worked on Scott's pouring crew "four or five times" in "late 2014" or "early 2015."[30] Plaintiffs Garcia and Salinas worked exclusively on the grinding crew.[31]

Defendants paid Plaintiffs two checks each pay period—one check for their regular hours and another for overtime hours worked.[32] The parties, however, dispute the amount of Plaintiffs' overtime compensation. Plaintiffs contend Defendants only paid them their regular hourly rate for each overtime hour worked, instead of one and

---

[26] Scott Depo., pp. 7-8, 12 [Doc. 41-7, pp. 3-4].
[27] *Id.* at pp. 12-13 [Doc. 41-7, p. 4].
[28] *Id.* at pp. 14-15 [Doc. 41-7, p. 5].
[29] *Id.* at pp. 15-18 [Doc. 41-7, pp. 5-6].
[30] Godburn Depo., pp. 11-12 [Doc. 41-9, pp. 12-13].
[31] Plaintiff Garcia worked for the Company from 2010 through approximately September 2014. Garcia Depo., p. 7 [Doc. 41-11, p. 8]. Plaintiff Salinas worked for the Company from 2012 through approximately September 2014. Salinas Depo., p. 11 [Doc. 41-10, p. 12].
[32] Rueben Depo. [Doc. 41-6, pp. 13-14]; Jones Depo. [Doc. 41-8, p. 30].

6

one-half times their hourly rate as required under the FLSA.  As evidence, Plaintiffs submit three charts summarizing their hours worked, pay stubs, and overtime calculations.[33]  Defendants, however, contend they paid Plaintiffs double their regular rate for each overtime hour worked and therefore did not violate the FLSA.[34]  No checks, pay stubs, or overtime calculations are in the record.

On December 10, 2014, Plaintiff Godburn filed this action seeking unpaid overtime compensation on behalf of himself and those similarly situated.  Plaintiffs Garcia and Salinas then opted into the suit.  The parties' cross motions for summary judgment are now ripe for ruling.

## DISCUSSION

The Court will first address Rueben and Scott's individual liability, and then turn to Plaintiffs' claims for overtime compensation and willfulness.

### I.     Individual Liability

Defendants contend Rueben and Scott must be dismissed because they are not "employers" under the FLSA.  The FLSA creates a private right of action against an "employer" who violates the overtime provisions set forth in 29 U.S.C. § 207.[35]  An employer is "any person acting directly or indirectly in the interest of an employer in

---

[33] [Docs. 43-1, 43-2, 43-3].
[34] Jones Depo. [Doc. 41-8, pp. 20-24].
[35] 29 U.S.C. § 216(b).

relation to an employee."[36]  Thus, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."[37]

To be personally liable, a corporate officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."[38]  To determine whether an officer meets this standard, courts consider the "economic reality" of the relationship between the parties, including "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."[39]  No single factor is dispositive.[40]  "Relevant control for purposes of individual liability is control in relation to the employee-Plaintiff."[41]  A jury, however, "may infer such control from the exercise of general supervisory powers or the exercise of control over other employees."[42]

---

[36] *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotations omitted).  *See also* 29 U.S.C. § 203(d).
[37] *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).
[38] *Patel*, 803 F.2d at 638.
[39] *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).  In an unpublished decision, the Eleventh Circuit questioned without deciding whether these factors apply "in the context of determining whether a corporate officer is an employer." *Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 846 n. 6 (11th Cir. 2009) (internal quotations omitted).
[40] *Mendoza v. Discount C.V. Joint Rack & Pinion Rebuilding, Inc.*, 101 F.Supp.3d 1282, 1290 (S.D. Fla. 2015).
[41] *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313-14 (11th Cir. 2013).
[42] *Id.*

The Court is unpersuaded by Plaintiffs' contention that Rueben and Scott are employers because they are corporate officers. "[A] supervisor's title does not in itself establish or preclude . . . liability under the FLSA."[43] The fact Rueben and Scott "each owned a substantial percentage of the corporation suggests that they had control over its financial affairs and supports a finding of personal liability."[44] Here, however, analyzing the evidence using the economic reality factors identified above, neither Rueben nor Scott exercised the necessary control to impose individual liability. "[U]nexercised authority is insufficient to establish liability as an employer."[45]

As to Rueben, he did not supervise Plaintiffs, and he was not sufficiently involved in the Company's day-to-day operations to be held liable as an employer. First, although he approves all firing decisions, he "normally" does not interview prospective employees or make hiring decisions, and he did not interview, hire, or fire Plaintiffs.[46] Second, although he schedules work assignments for the crews, no evidence reflects he oversees the crews' on-site work activities, issues instructions to crewmembers, or maintains employment records.[47] Most importantly, he does not set pay rates, and no evidence indicates he determines employees' overtime

---

[43] *Id.* at 1310 (noting "usual corporate roles are not always observed").
[44] *Id.* at 1313.
[45] *Alvarez Perez*, 515 F.3d at 1161 (citing *Patel*, 803 F.2d at 638).
[46] Rueben declaration [Doc. 41-3, p. 4]; Rueben Depo. [Doc. 41-6, pp. 7-8]; Jones Depo. [Doc. 41-8, pp. 13-14]. *Cf. Patel*, 803 F.2d at 638 (affirming district court's conclusion defendant was not an employer despite firing plaintiff because defendant did not direct day-to-day operations or set compensation).
[47] Rueben 30(b)(6) Depo., pp. 13-14 [Doc. 41-5, p. 4]; Rueben Depo. [Doc. 41-6, p. 5, 15]; Rueben declaration [Doc. 41-3, pp. 3-4]. *Cf. Lamonica*, 711 F.3d at 1314 (holding jury had sufficient basis to find defendants individually liable where defendants routinely issued instructions and inspected job site).

compensation.[48] Rueben's involvement in compensating crewmembers is limited to "informally" approving proposed pay raises and calling crew leaders to resolve paycheck discrepancies.[49] The Court's "primary concern is the supervisor's role in causing the FLSA violation."[50] Because the record contains no evidence Rueben has any involvement in determining employees' overtime compensation, he played no role in causing Plaintiffs' alleged FLSA overtime violations. Thus, the Court finds as a matter of law he cannot be held individually liable under the FLSA as Plaintiffs' employer.

Likewise, Scott cannot be held liable as an employer. Scott neither bears any responsibility for corporate duties nor exercises sufficient control in relation to the employee-Plaintiffs.[51] Because Plaintiffs Garcia and Salinas did not work on the pouring crew, Scott exercised no control over them.[52] Although Plaintiff Godburn testified he worked on Scott's pouring crew "four or five times," Scott's control in relation to Plaintiff Godburn was neither "substantial [nor] related to the company's FLSA obligations."[53] While Scott had authority to hire and fire crewmembers, he did

---

[48] Rueben Depo. [Doc. 41-6, p. 8] (explaining crew supervisors have autonomy to set pay rates); Jones Depo. [Doc. 41-8, pp. 22-24] (explaining grinding crew leader determined his crewmembers' overtime compensation based on his own formula). *Cf. Lamonica*, 711 F.3d at 1314 (holding jury had sufficient basis to find defendants individually liable where defendants personally promised to pay employees and used personal funds to do so).
[49] Rueben Depo. [Doc. 41-6, p. 8-9].
[50] *Lamonica*, 711 F.3d at 1313-14. *See also Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998) (explaining the "economic reality analysis focus[es] on the role played by the corporate officers in causing the corporation to undercompensate employees").
[51] Scott Depo., p. 12 [Doc. 41-7, p. 4].
[52] Salinas Depo., p. 11 [Doc. 41-10, p. 12]; Garcia Depo., p. 7 [Doc. 41-11, p. 8].
[53] *Lamonica*, 711 F.3d at 1314.

not interview, hire, or fire Plaintiff Godburn.[54] Although Scott "sometimes" supervised the pouring crew and on "rare" occasions kept records of crewmembers' hours worked, no evidence indicates he supervised or kept records when Plaintiff Godburn worked on the pouring crew or determined Plaintiff Godburn's wages.[55] Likewise, the record contains no evidence Scott determined any crewmembers' overtime compensation. Accordingly, the Court finds as a matter of law Scott cannot be held individually liable as an employer in this case.

## II.   Overtime Compensation

Although Plaintiffs seek summary judgment on their claim for overtime compensation, they present no admissible evidence substantiating their claim. The documents underlying the three charts Plaintiffs proffer summarizing their hours worked, pay stubs, and overtime damages calculations are not in the record.[56] Absent evidentiary support, the Court cannot consider these charts on summary judgment.[57] Accordingly, the Court **DENIES** Plaintiffs' Motion on overtime compensation. Thus, the Court also **DENIES** Plaintiffs' Motion as to liquidated damages and attorney's fees.

---

[54] Scott declaration [Doc. 41-4, p. 4] (explaining he did not hire or fire Plaintiffs).
[55] Scott Depo., pp. 7-8, 13-15 [Doc. 41-7, pp. 3-5].
[56] [Docs. 43-1, 43-2, 43-3].
[57] *Guijosa-Silva v. Wendell Roberson Farms, Inc.*, No: 7:10-CV-17 HL, 2012 WL 860394, at *4 (M.D. Ga. Mar. 13, 2012) (explaining "[w]ithout evidentiary support, the Court cannot allow a summary to be admitted under FRE 1006"). Although some of Plaintiffs' pay stubs were identified as exhibits in the parties' depositions, the parties did not file these exhibits with the Court. Moreover, these exhibits only included pay stubs from 2014 and thus would be insufficient to establish Plaintiffs' damages. *See* [Doc 41-5, p. 19] (identifying Exhibit 2 as pay stubs from 2014); [Doc. 41-5, pp. 25-28].

### III. Willful Violation

Finally, both parties seek summary judgment on the Company's alleged willful violation of the FLSA. Ordinarily, when a defendant violates the FLSA, a plaintiff may recover wages worked for two years. However, when the defendant willfully violates the FLSA, the plaintiff may recover wages worked for three years.[58] To establish a willful violation, the plaintiff must prove "his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was."[59]

If the jury finds the Company failed to pay Plaintiffs overtime, sufficient evidence exists to support a finding such violation of the FLSA was willful. The Company paid Plaintiffs two checks each pay period—one check for hours under forty and another for overtime hours worked.[60] Separate checks for the same pay period supports a finding the Company either knew its conduct was prohibited or showed reckless disregard about whether it was.[61] Accordingly, the Court **DENIES** both parties' Motions as to the Company's alleged willful violation.

### CONCLUSION

For the reasons set forth above, the Court **HEREBY GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Summary Judgment [Doc. 41] and

---

[58] *Allen v. Bd. of Public Educ. for Bibb Cnty*, 495 F.3d 1306, 1323-24 (11th Cir. 2007) (citing 29 U.S.C. § 255(a)).
[59] *Alvarez Perez*, 515 F.3d at 1162-63 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).
[60] Rueben Depo. [Doc. 41-6, pp. 13-14]; Jones Depo. [Doc. 41-8, p. 30].
[61] *See Ochoa v. Alie Bros, Inc.*, No. 6:06-cv-609-Orl-DAB, 2007 WL 2781192, at *7 (M.D. Fla. Sept. 19, 2007) (explaining "Defendants' willful violation of the FLSA is supported by Defendants' use of separate time card reports and two sets of checks for the same pay periods").

**DENIES** Plaintiffs' Motion for Summary Judgment [Doc. 43].  Specifically, the Court GRANTS Defendants' Motion and DENIES Plaintiffs' Motion as to Rueben and Scott Adams, finding they cannot be held individually liable; DENIES both parties' Motions as to willfulness; and DENIES Plaintiffs' Motion as to overtime compensation, liquidated damages, and attorney's fees.

    **SO ORDERED,** this 31st day of March, 2017.

                                                        S/ C. Ashley Royal  
                                                        C. ASHLEY ROYAL, SENIOR JUDGE  
                                                        UNITED STATES DISTRICT COURT